UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIAJIE GAO,

        Petitioner,

       v.

WILLIAM BARR, United States Attorney General, *et al.*,

        Respondents.

**DECISION AND ORDER**

6:20-CV-06529 EAW

---

# **INTRODUCTION**

Petitioner Jiajie Gao ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that his continued detention violates his right to due process and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), because his removal is not significantly likely to occur in the reasonably foreseeable future. (*Id.*). For the reasons that follow, the Court finds that Petitioner has not met his initial burden of demonstrating that there is good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, and accordingly denies both the petition and Petitioner's duplicative motion for release from custody (Dkt. 14).

## BACKGROUND

**I.      Factual Background**

Petitioner is a native and citizen of the People's Republic of China. (Dkt. 5 at 10). He entered the United States on or about January 12, 2019, as an F-1 student. (*Id.*). On March 18, 2019, during a routine property inspection, Petitioner was found with a stash of "military grade" weapons in his apartment, including 33 rifles, two shotguns, and various types of ammunition. (*Id.*). Petitioner was subsequently arrested and charged with criminal possession of a weapon in the third degree and criminal possession of a weapon in the fourth degree, in violation of the New York State Penal Law. (*Id.*).

Petitioner was served with a notice to appear charging him with being subject to removal pursuant to § 237(a)(1)(C)(i) of the Immigration and Nationality Act (the "INA") on October 23, 2019, and was placed into removal proceedings. (*Id.* at 11). Petitioner appeared before an immigration judge ("IJ") on December 30, 2019, and conceded removability. (*Id.*). Petitioner requested a bond hearing, and the IJ denied bond based upon dangerousness. (*Id.*). Petitioner was detained without bond at the BFDF pending removal proceedings. (*Id.*).

Petitioner was convicted of criminal possession of a weapon in the fourth degree on January 27, 2020. (*Id.*).

On February 14, 2020, Petitioner appeared before an IJ, waived the right to seek relief from removal, and accepted an order of removal to China without reserving appeal. (*Id.* at 12). The IJ accordingly ordered Petitioner removed from the United States to China. (*Id.*).

Petitioner has a valid passport from the People's Republic of China and no travel documents are required for his removal. (*Id*.). Because of the ongoing COVID-19 pandemic, no flights from the United States to China occurred in April, May, or June of 2020. (*Id*. at 13). Petitioner was scheduled for removal on flights in July, August, September, and November of 2020, but each of those flights was cancelled. (*Id*. at 13; Dkt. 12).

Under normal circumstances, there are no institutional bars to the removal of aliens to China. (Dkt. 5 at 13). In fiscal year 2018, the Department of Homeland Security removed 1,022 individuals to China. (*Id*.).

## II. Procedural Background

Petitioner filed his petition *pro se* on July 20, 2020. (Dkt. 1). Respondents filed their response on September 14, 2020. (Dkt. 5). Petitioner filed his reply on September 24, 2020. (Dkt. 7). The parties then submitted various letter updates to the Court. (Dkt. 8; Dkt. 9; Dkt. 10; Dkt. 11; Dkt. 12; Dkt. 13). On February 1, 2021, Petitioner filed a motion for release from custody. (Dkt. 14).

## DISCUSSION

### I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality

of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.  Legal Framework

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the Government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id*.

In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months

following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

### III.  Petitioner has Not Satisfied his Initial Burden

Petitioner bears the initial burden to demonstrate that there is good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future. *See Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017) (noting that *Zadvydas* "places an initial burden on the detainee"). "In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien." *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019).

Here, there is no dispute that Petitioner possesses a valid passport from the People's Republic of China and could thus be removed to China were a flight available. Accordingly, the sole impediments to his removal are the travel restrictions flowing from the COVID-19 pandemic. The Court agrees with the other federal courts that have concluded this is insufficient to satisfy the initial burden of demonstrating there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See, e.g., Ramirez v. Searls*, No. 20-CV-6018 (CJS), 2020 WL 2748203, at *3 (W.D.N.Y. May 27, 2020) (finding initial burden not satisfied where DHS had obtained travel document and the only barrier to the petitioner's removal was the travel restrictions associated with the COVID-19 pandemic); *Mohamed B. v. Decker*, No. CV 20-

13178 (KM), 2020 WL 6707949, at *4 (D.N.J. Nov. 16, 2020) (collecting cases holding "that a country's COVID-19 travel restrictions are insufficient to show that an immigration detainee's removal is not reasonably foreseeable"); *Tekleweini-Weldemichael v. Book*, No. 1:20-CV-660-P, 2020 WL 5988894, at *5 (W.D. La. Sept. 9, 2020) (initial burden not satisfied where travel document had been issued and had not expired, notwithstanding the suspension of travel due to COVID-19), *adopted*, 2020 WL 5985923 (W.D. La. Oct. 8, 2020); *Shah v. Wolf*, No. 3:20-CV-994-C-BH, 2020 WL 4456530, at *3 (N.D. Tex. July 13, 2020) ("Aside from this circumstance of Pakistan's suspension of international travel, which affects all Pakistani nationals abroad at the time enforcement of the suspension began, Petitioner has not identified any impediments to his removal once the travel restrictions are loosened or lifted. Accordingly, he has not shown good reason to believe his removal would not take place in the reasonably foreseeable future."), *adopted*, 2020 WL 4437484 (N.D. Tex. Aug. 3, 2020). Active and ongoing efforts are occurring worldwide to bring the pandemic under control and allow international travel in the reasonably foreseeable future, and there is no reason to believe that those efforts will prove unsuccessful.

The Court notes that this case is distinguishable from *Rual v. Barr*, No. 6:20-CV-06215 EAW, 2020 WL 3972319 (W.D.N.Y. July 14, 2020), wherein it determined that the petitioner had satisfied his initial burden. In *Rual,* before the petitioner could be removed, it was necessary for DHS to obtain travel documents from the Embassy of South Sudan. *Id*. at *3. However, the Embassy of South Sudan had closed due to the COVID-19 pandemic and there was no indication in the record before the Court of when it might

reopen or how long it would take to obtain the necessary travel documents once that reopening occurred.  *Id*.  Because of these multiple impediments to the petitioner's removal, the Court found the initial burden satisfied. *Id*.; *see also Aung v. Barr,* No. 20-CV-681-LJV, 2020 WL 4581465, at *3 (W.D.N.Y. Aug. 10, 2020) (finding initial burden satisfied where removal was not possible due to both lack of travel documents, and uncertain time frame required to obtain the same, in addition to COVID-19 restrictions).

Here, unlike in *Rual*, no travel documents are required and there is no need to wait for an embassy to reopen—as soon as a flight to China is available, Petitioner can be placed on it.  There is further no reason in the record for the Court to conclude that the travel restrictions associated with the COVID-19 pandemic, which are the sole impediment to Petitioner's removal, will extend past the reasonably foreseeable future.  Accordingly the petition, and Petitioner's duplicative motion for release from custody, must be denied.

However, the Court notes that "[w]hat constitutes the 'reasonably foreseeable future' will depend on the length of detention." *Hassoun*, 2019 WL 78984, at *4.; *see Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").  "In effect, the parties' respective burdens shift as the length of detention increases." *Hassoun*, 2019 WL 78984, at *4.  The Court thus finds it appropriate to deny the petition without prejudice, and subject to renewal after 90 days in the event Petitioner has not been removed.

## **CONCLUSION**

For the foregoing reasons, the Court denies the petition without prejudice, subject to renewal within 90 days in the event the Petitioner has not been removed. The Clerk of Court is instructed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:     February 18, 2021
           Rochester, New York